UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHRISTOPH BOLLING, et al., | CASE NO. C13-0872JLR |
| Plaintiffs, | ORDER |
| v. | |
| MITCHELL H. GOLD, et al., | |
| Defendants. | |

## I.   INTRODUCTION

Before the court is Plaintiffs' motion to amend their Second Amended Complaint ("SAC") and file a Third Amended Complaint ("TAC"). (Mot. (Dkt. # 102).) Plaintiffs' proposed TAC would revive claims based on the Security Exchange Act of 1934 that the court previously dismissed in rulings issued on January 28, 2014, and June 5, 2014. (*See* 1/28/14 Order (Dkt. # 54); 6/5/14 Order (Dkt. # 75).) The court has reviewed the motion,

ORDER- 1

all submissions filed in support of and opposition thereto, the balance of the record, and the applicable law. Being fully advised,[1] the court GRANTS the motion.

## II.   BACKGROUND

Plaintiffs are roughly 30 investors in Dendreon Corporation ("Dendreon") who opted out of a class action settlement in 2013. (*See* SAC (Dkt. ## 55 (redacted), 56 (sealed)) ¶¶ 18-39.) Dendreon is a Seattle-based biotechnology firm that makes and distributes a prostrate cancer treatment called Provenge.[2] (*See id.* ¶ 40.) Defendants are several Dendreon officers, including Mitchell H. Gold, who served as Dendreon's President, Chief Executive Officer ("CEO"), and Chairman of the Board; Gregory R. Schiffman, who served as Chief Operating Officer ("COO") and Executive Vice President; and Hans E. Bishop, who served as Chief Financial Officer ("CFO"), Executive Vice President, and Treasurer. (*Id.* ¶¶ 41-43.) Plaintiffs claim they were harmed by an extensive fraud related to Dendreon's launch of Provenge. (*See generally id.*)

If permitted by the court, the proposed TAC will be Plaintiffs' fourth complaint in this lawsuit. (*See* Compl. (Dkt. ## 1 (redacted), 7 (sealed)); Am. Compl. (Dkt. ## 32 (redacted), 33 (sealed)); SAC; TAC.) Defendants filed two previous motions to dismiss,

---

[1] Plaintiffs requested oral argument. (Mot. at 1.) Defendants did not. (Resp. (Dkt. # 104) at 1.) The court deems oral argument to be unnecessary with respect to the disposition of this motion.

[2] Plaintiffs originally sued Dendreon, along with various individual defendants, but recently stipulated to Dendreon's dismissal. (Stip. (Dkt. # 110); Order Dismissing Dendreon (Dkt. # 111).)

and in both instances the court dismissed Plaintiffs' federal securities fraud claims but permitted several state law claims to advance.  (1/28/14 Order; 6/5/14 Order.)  In its second order dismissing Plaintiffs' federal securities fraud claims, the court granted Plaintiffs leave to amend their complaint within 20 days of the date of the order.  (6/5/14 Order at 31-32.)  Plaintiffs did not file an amended complaint within the timeframe set by the court (*see generally* Dkt.), and instead proceeded to conduct discovery with respect to their state law claims.  (*See* Mot. at 1 ("Between July and October 2014, Defendants produced nearly 160,000 pages of documents to Plaintiffs.").)  On September 4, 2014, the court entered a scheduling order which set the deadline for amended pleadings on August 26, 2015.  (Sched. Ord. (Dkt. # 89) at 1.)

Plaintiffs assert that the information they amassed during discovery on their state law claims "significantly alter[ed] the landscape" of this suit and "revealed . . . with respect to each category of omissions/misstatements alleged in the SAC . . . [that] Defendants <u>unequivocally</u> knew their public statements were false or misleading." (Mot. at 1 (emphasis in original).)  Thus, Plaintiffs now argue that they have discovered direct evidence of Defendants' scienter—an essential element missing from the previous iterations of their claims.  On this basis, Plaintiffs seek to amend their SAC in an effort to revive their previously dismissed federal securities fraud claims.  (*See id.*)  Defendants oppose the motion arguing that any amendment to Plaintiffs' SAC would be procedurally improper in light of the Private Securities Litigation Reform Act ("PSLRA") and futile in any event.  (*See* Resp. (Dkt. # 104).)

//

### III.   ANALYSIS

**A.  Standards**

Plaintiffs assert that their motion is governed by Federal Rule of Civil Procedure 15(a), which provides that "[t]he court should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2); (*see* Mot. at 1-2). Plaintiffs correctly note that the Ninth Circuit has instructed district courts to apply this rule "with extreme liberality." (Mot. at 1 (citing *AmerisourceBergen Corp. v. Dialyist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006); *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).) A district court should analyze the following factors in deciding whether to grant leave to amend, including: (1) undue delay, (2) bad faith, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the complaint was previously amended. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). In the absence of any of these factors, "the leave sought should, as the rules require, be 'freely given.'" *Foman*, 371 U.S. at 182. Consideration of these principles is especially important in the context of the PSLRA because it "requires a plaintiff to plead a complaint of securities fraud with an unprecedented degree of specificity." *Eminence Capital*, 316 F.3d at 1052.

Defendants, however, argue that the forgoing standard is incorrect under the present circumstances and that Plaintiffs' motion is procedurally improper. (Resp. at 3-5.) Defendants assert that once the court dismissed Plaintiffs' federal securities claims and Plaintiffs failed to file an amended complaint within the timeframe set forth in the court's order, the court's order automatically ripened into a dismissal with prejudice.

(*See* Resp. at 3.)  Defendants contend that this means that the liberal standard ordinarily applicable to a motion to amend pleadings is inappropriate here, and Plaintiffs' motion is instead governed by the more stringent standards applicable to a motion under Federal Rules of Civil Procedure 59 or 60. (*Id.* at 3-4.)  Defendants also argue that under the PLSRA, a complaint must be tested by reference to facts in Plaintiffs' possession when the action was commenced and not by means of facts Plaintiffs unearthed during discovery. (*Id.* at 4-5.)  Having reviewed the relevant law, the court concludes that Defendants are incorrect.

The court's prior orders dismissing Plaintiffs' federal securities fraud claims did not end this litigation.  Plaintiffs' state law claims survived. (*See generally* 1/28/14 Order; 6/5/14 Order.)  Pursuant to Federal Rule of Civil Procedure 54(b), "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54(b).  Further, the Ninth Circuit has recognized that "[a]s long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind or modify any interlocutory order for cause seen by it to be sufficient." *City of L.A. v. Santa Monica Baykeeper*, 254 F.3d 882, 889 (9th Cir. 2001) (italics omitted) (quoting *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981) and citing *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000) (stating that when a district court issues "an interlocutory order, the district court has plenary power over it

ORDER- 5

and this power to reconsider, revise, alter or amend the interlocutory order is not subject to the limitations of Rule 59"); *High Country Arts & Craft Guild v. Hartford Fire Ins. Co.*, 126 F.3d 629, 635 (4th Cir. 1997) (same); *Wagoner v. Wagoner*, 938 F.2d 1120, 1122 n.1 (10th Cir. 1991) (same)). No judgment has been entered in this case, and the court retains plenary power to revisit its prior rulings herein.

The court also finds that the PSLRA sets up no barrier to Plaintiffs' motion. In this regard, the court finds *WPP Luxembourg Gamma Three Sarl v. Spot Runner Inc.*, 655 F.3d 1039 (9th Cir. 2011), to be instructive. *WPP* involved an appeal of a district court's dismissal of a claim for violation of Section 10(b) of the Exchange Act and a cross-appeal of the district court's dismissal of the Section 10(b) claim without prejudice. 655 F.3d at 1058-59. In addressing the cross-appeal and the district court's decision to dismiss the claims without prejudice, the Ninth Circuit noted that where a district court dismisses some claims and others survive a motion to dismiss, the district court, within its discretion, can allow an amended complaint even with respect to claims the district court earlier dismissed. *Id.* at 1059. The Ninth Circuit further noted that "this procedure would be appropriate should discovery reveal evidence indicating that previously dismissed Defendants were in fact involved in the alleged fraudulent conduct." *Id.* Indeed, the Ninth Circuit remarked that "[t]o some extent, the ability of the district court to revive dismissed claims should evidence come to light tempers the heightened pleading standards of the PSLRA in securities actions where claims survive against co-

ORDER- 6

defendants." *Id.*[3] Although *WPP* occurred in the context of an order to dismiss without prejudice, nothing in Rule 54(b) indicates that the result would be any different if the interlocutory order of dismissal had been with prejudice. *See* Fed. R. Civ. P. 54(b).

Further, the court's order in this case did not expressly indicate whether it was with or without prejudice. (*See generally* 6/5/14 Order.) However, since the court offered Plaintiffs the opportunity to amend their complaint, it follows logically that the court's June 5, 2014, order of dismissal was without prejudice. When Plaintiffs did not file an amended complaint within the specified time period, the court did not issue an order dismissing the claims with prejudice and never expressly warned Plaintiffs that it intended to do so. Defendants nevertheless argue, based on *Lynch v. City of Alhambra*, 880 F.2d 1122, 1124 (9th Cir. 1989), that the court's June 5, 2014, order automatically ripened into an order with prejudice after Plaintiffs failed to file an amended complaint within the timeframe set by the court. (Resp. at 3.) However, this argument stretches *Lynch* too far. In *Lynch*, the court stated that "[b]ecause [the plaintiff] failed to cure the deficiency perceived by the district court within the period provided by the district court, the dismissal was converted to a final order of dismissal with prejudice." *Id.* The court

---

[3] *See also Dow Corning Corp. v. BB&T Corp.*, No. CIV 09-5637 (FSH)(PS), 2010 WL 4860354, at *9 n.5 (D.N.J. Nov. 23, 2010) (dismissing a Section 10(b) claim against one of two defendants without prejudice and noting plaintiffs could seek to amend complaint against dismissed defendant based on discovery into the same claims against the other defendant); *In re Allstate Life Ins. Co. Litig.*, No. CV-09-8162-PCT-GMS, 2012 WL 176497, at *6 (D. Ariz. Jan. 23, 2012) ("[N]o court in the Ninth Circuit has held amendments in PSLRA cases are necessarily barred once discovery commences."); *Winter Family Trust v. Queen*, 503 F.3d 319, 337 (3d Cir. 2007) ("If a private securities case proceeds past the pleading stage against a corporation and discovery reveals individual culpability, a plaintiff may seek permission to amend the complaint to assert claims against individual defendants.") (citing Fed. R. Civ. P. 15).

acknowledges that the Ninth Circuit's use of the passive voice renders its statement less than crystal clear, but nevertheless, there is no express indication that this conversion happened automatically and without any affirmative act by the court. *See id.* Thus, the court concludes that neither its prior order dismissing Plaintiffs' federal securities claims nor the PSLRA prohibit the court from entertaining Plaintiffs' motion to amend their complaint.

Further, as Plaintiffs point out, the deadline for filing amended pleadings in this matter has not yet expired and will not do so until August 26, 2015. (*See* Sched. Ord. at 1.) Thus, interpreting the court's June 5, 2014, order as automatically ripening into a dismissal with prejudice would be particularly suspect here when the court's scheduling order indicates that the filing of amended pleadings is still timely. The better interpretation of the relevant events is simply that Plaintiffs did not have sufficient facts in hand to amend their complaint within 20 days of the court's June 5, 2014, order and so appropriately and ethically chose not to do so. Following the conduct of discovery regarding their remaining state law claims, however, they apparently believe that they do have sufficient facts at this point in time to support the allegations contained in the TAC consistent with their ethical and Federal Rule of Civil Procedure 11 obligations. Thus, the court concludes that it has the authority to revisit its earlier order dismissing Plaintiffs' federal securities claims. Because the court's deadline for filing amended pleadings has not passed, the court also concludes that the proper standard for considering Plaintiffs' motion to amend is Rule 15(a). *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992) (holding that the standard for a

motion to dismiss is governed by Rule 15(a) prior to the expiration of the court's scheduling deadline for amended pleadings and governed Rule 16(b) after the expiration of the deadline).[4]

**B. Plaintiffs' Proposed TAC**

Having determined what standard to apply, the court now considers the proposed amendments in Plaintiffs' TAC. Defendants assert that Plaintiffs' proposed amendments would be futile for various reasons.[5] The court considers the parties' arguments with respect to each category of omissions/misstatements alleged in the proposed TAC. Those categories include: (1) Defendants' statements concerning the $350-$400 million revenue guidance, (2) Defendants' 2,000 patient forecast and related "on track" statements, (3) Defendants' statements concerning capacity constraints, (4) Defendants' alleged undisclosed expansion of new treatment centers in 2010, and (5) Defendants' alleged difficulties with physician reimbursement. (*See* Mot. at 3-11; Resp. at 6-12.) Ultimately, the court concludes that the discovery Plaintiffs obtained from Defendants related to Plaintiffs' state law claims significantly altered the landscape with respect to Plaintiffs' previously dismissed federal securities fraud claims, and as a result, the court

---

[4] The court is aware that there are special or heightened considerations when analyzing the adequacy of a complaint in the context of the PSLRA. (*See* 1/28/14 Order (Dkt. # 54) at 11-13; 6/5/14 Order at 12-14.) The court has considered these standards, and they are incorporated in this order.

[5] Defendants do not challenge Plaintiffs' proposed amendments on any grounds other than futility. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003) (listing various factors the court may consider on a motion to dismiss in addition to futility); (Resp. at 6 ("Taking [the categories of proposed amendment] in reverse order, we explain why plaintiffs have in no instance shown that amendment would be anything other than futile – much less shown that the Court should set aside its final judgment.").)

concludes that Plaintiffs' motion to amended their SAC and file the proposed TAC should be granted.

### 1. Revenue Guidance

Defendants correctly note that the court previously dismissed Plaintiffs' federal securities claims concerning Defendants' $350-$400 million revenue guidance and patient-treatment predictions as inactionable because the statements were forward-looking, identified as such, and accompanied by meaningful cautionary language. (1/28/14 Order at 15-21.) Defendants assert that this defect cannot be cured by additional allegations concerning scienter and any such attempt would be futile. (Resp. at 6.) Plaintiffs do not challenge this argument except to note that the court's prior rulings did not address two sets of forward-looking statements that were not accompanied by cautionary language. (Reply (Dkt. # 108) at 4 (citing TAC ¶¶ 270, 281).) Plaintiffs argue that their proposed amendments would not be futile with respect to these forward-looking revenue guidance statements. (*Id.*) The court agrees. It may be that these allegations will be subject to a later motion for summary judgment, but at present Plaintiffs' amended allegations with respect to these two sets of statements may move forward.

### 2. The 2,000 Patients Prediction

Defendants also assert that any scienter-related amendments to Plaintiffs' claims regarding Defendants' 2,000 patient prediction would be futile because Dendreon did not issue a corrective statement concerning this prediction that could have caused the drop in stock price and the damages alleged here. (Resp. at 7.) However, both the SAC and the

ORDER- 10

TAC allege that Dendreon's August 3, 2011, corrective disclosure concerning revenue implicitly revealed that, by the end of July, 2011, Dendreon had treated the equivalent of only 1,577 patients. (*See* SAC ¶ 189; TAC ¶ 238.) Further, Plaintiffs allege that Defendants themselves assumed a relationship between the number of patients, the number of infusions, and revenue. (*See* TAC ¶¶ 226, 236.) Thus, the court also grants Plaintiffs' motion for leave to amend their complaint with respect to this issue.

### 3. Capacity Constraints

Defendants assert that Defendant Gold was truthful when he claimed that Dendreon was operating at maximum capacity in October 2010 by generating $9-10 million in revenues because this figure is how Defendants' defined Dendreon's maximum capacity. (Resp. at 7-8.) Plaintiffs respond that Defendants miss the point because the falsity lies precisely in Defendants' assertion that $9-$10 million represented Dendreon's maximum capacity. (Reply at 9.) The court agrees. In its June 5, 2015, order, the court stated that Plaintiffs' allegation—that Defendants discussed at Dendreon's December 5, 2010, board meeting the fact that Dendreon had not been utilizing its full manufacturing capacity since the launch of Provenge—although consistent with Plaintiffs' narrative of fraud, did not tip the balance of the court's holistic scienter analysis in Plaintiffs' favor. (6/5/14 Order at 26.) Plaintiffs' additional material in their proposed TAC, which is based on documents and information uncovered as result of discovery surrounding their state law claims, now bolsters their previous allegations concerning Defendants' statements at the December 2010 Dendreon Board of Director's meeting. (*See* Mot. at 8-9 (citing TAC ¶¶ 186, 190, 197-98, 201, 203, Appendix B).) The additional allegations

concerning capacity constraints now tip the balance of the court's scienter analysis in Plaintiffs' favor.  Accordingly, the court grants Plaintiffs' motion to amend with respect to this issue.

### 4.  Newly-Added Infusing Sites

The court also grants Plaintiffs' motion to amend their complaint concerning their claim that Defendants lied about the number of infusing medical centers in 2010.  (*See, e.g.*, TAC ¶ 350 ("Defendants … also failed to disclose that, in 2010, Dendreon in fact had already started infusions at additional sites (contrary to their statements that they only had 50 sites), and that Dendreon incorporated the revenues from these additionsl sites into Dendreon's 2010 reported revenues.").)  Plaintiffs argue that despite repeated comments on the number of infusing sites Dendreon never told investors of the newly added sites but nevertheless included revenues from these sites in Dendreon's 2010 financial results.  (Mot. at 7.)  Defendants argue they had no obligation to provide information concerning the number of added sites, and in fact quite straightforwardly told analysts—who knew that some number of sites had been added, and asked for specifics—that Dendreon was not at that time providing additional detail in this area.  (Wetchkin Decl. (Dkt. # 105) Ex. 1 at 13-14, 16.)  As the court has noted elsewhere, "it does not demonstrate scienter to point out that analysts asked questions about a topic," rather "[i]t merely shows . . . a point of interest for investors."  (6/5/14 Order at 28.)  As Plaintiffs' new allegations illuminate, however, this is not a matter of simply overtly declining to provide information to satisfy an investor's curiosity.  Plaintiffs allege in the TAC that Defendants made affirmative statements concerning the number of infusing sites and

these statements allegedly misled investors. (*See, e.g.*, TAC ¶¶ 177, 181 (alleging that on Dendreon's January 7, 2011, conference call, Defendant Bishop stated that Dendreon finished 2010 with "slightly more than [50 sites]," when in reality Dendreon finished 2010 with 83 infusing sites, which is 66% higher than the approximately 50 sites that Dendreon referred to on company conference calls).) As a result of the proposed amendments, Plaintiffs adequately allege that Defendants acted with scienter by concealing from investors the existence of the newly added infusing centers. *See In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 880 n.8 (9th Cir. 2012) (indicating that an omission is actionable only to the extent that plaintiffs can identify an affirmative statement rendered misleading in light of the nondisclosure). Accordingly, the court grants Plaintiffs' motion to amend with respect to this issue.

**5. Physician Reimbursement**

Finally, the court also grants Plaintiffs' motion to amend with respect to the reimbursement issue. Defendants argue that Plaintiffs "identify a single challenged statement related to reimbursement" on April 7, 2011. (Resp. at 11.) Yet, the TAC alleges numerous instances where Defendants affirmatively stated to investors or analysts that physician reimbursement was not a concern, was proceeding as planned, or was otherwise not an issue. (*See, e.g.*, TAC ¶¶ 96, 98-100, 114, 118, 123-25, 135, 138.) Further, Defendants also assert that surveys reporting on significant reimbursement concerns are not "probabtive of scienter" because they were all "late presented surveys" occurring in June/July 2011—just before Dendreon withdrew its revenue guidance. (Resp. at 11-12.) However, as Plaintiffs point out, the TAC alleges numerous reports and

ORDER- 13

1  surveys from as early as May 2010, through early 2011, in which Defendants were made
2  aware of physicians' reimbursement concerns and the impact those concerns were having
3  on Provenge's launch.  (*See* TAC ¶¶ 83, 91, 93-94, 95, 97, 101, 103, 108-10, 111-13,
4  115-17, 126-29, 145.)  These new allegations, based on discovery conducted in
5  conjunction with Plaintiffs' state law claims, have changed the landscape with respect to
6  Plaintiffs' federal securities fraud claims.  The court grants Plainitffs' motion to amend
7  with respect to the physician reimbursement issue as well.

## IV.  CONCLUSION

Based on the foregoing, the court GRANTS Plaintiffs' motion for leave to amend their complaint and file the TAC (Dkt. # 102).  Plaintiffs shall file a clean and signed copy of the TAC within five days of the date of this order, and the TAC shall become the operative complaint in this proceeding.

Dated this 19th day of May, 2015.

JAMES L. ROBART
United States District Judge

ORDER- 14